UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE DOG POUND, LLC,

        Plaintiff,                      Case Number 09-13104
                                                 Honorable David M. Lawson

v.

CITY OF MONROE,

        Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

In July 2009, the plaintiff filed an action in the Monroe County, Michigan circuit court alleging the unconstitutionality of a City of Monroe ordinance requiring street merchants to obtain a license plus additional permission to sell edible items, goods, wares, and merchandise in a restricted area of the city. After the defendant City removed the case to this Court, the plaintiff filed a motion for a preliminary injunction to prevent enforcement of the ordinance against the plaintiff's street hot dog vending business. A hearing was held on the motion on March 22, 2010, and the Court ordered supplemental briefing. Sometime thereafter, the parties asked the Court to defer ruling on the motion because they were engaged in settlement negotiations. A mediator was appointed, and settlement discussions ensued.

In the meantime, perhaps as a result of the negotiations, the City amended its Hawker and Peddler and Transient Merchant Ordinance to eliminate the restricted area limitations, which was a primary source of the plaintiff's complaint. The main focus of the amended ordinance is regulating the described activity and requiring licensure, but it still contains a provision temporally limiting street sales activity to ten minutes in a single location. The plaintiff maintains that the ten-

minute provision is constitutionally offensive because it has the practical effect of preventing its activity. However, the defendant insists that the limitation is subject to modification by variance if the plaintiff were ever to apply for a license, which it has not. Although settlement negotiations are ongoing, the parties now wish the motion to be decided. The Court finds that the plaintiff has not established grounds for equitable relief at the present time. Therefore, the motion for a preliminary injunction will be denied.

I.

The plaintiff, The Dog Pound, LLC, is a mobile hot dog stand business seeking to sell hot dogs, non-alcoholic beverages, chips, and condiments in the area close to the city hall and the courthouse in the city of Monroe, Michigan. According to the complaint, in anticipation of launching the business, the plaintiff's two owners, Rochelle Dalrymple and Cheri Sicuso, purchased a $3,399 Hummer® hot dog cart, also known as the "World's Best Hot Dog Cart," which passed the Monroe County Health Department's inspection. Compl. ¶ 5; Pl.'s Mot. Prelim. Inj. at 3; The cart is relatively large – 52" wide, 78" long, and 56" high – weighs 350 pounds, rests on a trailer, and was to be removed from the site each day. Pl.'s Mot. for Prelim. Inj., Ex. B at 17-18.

On June 5, 2009, the owners submitted to the City an application for a license under the Hawker, Peddler and Transient Merchant Ordinance, which is at the center of this dispute. The ordinance was enacted by the City on March 25, 1996, but as noted above, it has now been amended. As originally enacted, the ordinance set out a prohibition on sales within the so-called "restricted area" without the approval of the Mayor and City Council. City of Monroe Ordinance § 374-11. The restricted area essentially comprised the City's downtown area and, in particular, covered the location where the plaintiff wanted to operate its hotdog stand.

The plaintiff sought a license to operate its hot dog stand for three months, seven days a week, from 11 a.m. to 8 p.m. According to the defendant, on June 9, 2009, the City issued to the plaintiff "License No. 4849 which was to expire on November 3, 2009." *See* Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. at 4. However, under the original version of the ordinance, the plaintiff was required to obtain additional permission to operate its business in the "restricted area." Under Ordinance section 374-11, "No person shall engage in the business of a hawker and peddler or a transient merchant within the restricted area . . . without the approval of the Mayor and City Council." City of Monroe Ordinance § 374-11. The restricted area was defined by the names of the streets, but essentially comprised the City's downtown area and, in particular, covered the location where the plaintiff wanted to operate its hotdog stand.

Until it was eliminated by amendment, the Ordinance's restricted area provisions set forth a five-factor test for the mayor and city council to apply. The test included such considerations as "[w]hether a similar business is being operated from a permanent location in the restricted area," and "[t]he type of business to be operated and the size and location of necessary facilities." City of Monroe Ordinance § 374-11(C)(1), (3) (1996). On the same day it received its license, the plaintiff submitted a formal request for approval to sell items in the restricted areas of the City of Monroe, on the corner of East First Street and Washington Street, and expressed an interest in future parades and events in downtown Monroe. After receiving feedback from various departments within the City — several which were concerned about potential competition with property-tax paying restaurants — the City Council unanimously denied the plaintiff's request.

On July 14, 2009, the plaintiff submitted a proposal to the County of Monroe to position the hot dog vending service at the Loranger Square, a public square in front of the Monroe County

-3-

courthouse. On July 29, 2009, Chairman of Monroe County Board of Commissioners William D. Sisk denied the plaintiff's request, stating that in order for the County to consider a request to operate within the public square, the plaintiff must first obtain a license under the city's Hawker and Peddler and Transient Merchant Ordinance.

A week later, on July 21, 2009, the plaintiff commenced the present litigation in state court. It moved for a preliminary injunction after the case was removed, alleging that (1) the city council lacked the power to pass the ordinance at issue because the sale of hot dog products and other food through a mobile hot dog stand is not injurious to the public health, safety, morals, or general welfare; (2) the ordinance violates the Equal Protection Clause because it creates an impermissible distinction between local, tax-paying merchants on the one hand and hawkers, peddlers, and transient merchants who do not pay property taxes on the other; and (3) the ordinance is vague in violation of the First Amendment because it does not contain standards that the mayor or the city council could apply in deciding whether to issue a license.

II.

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. The Court must consider four factors when determining whether to issue a preliminary injunction: (1) the likelihood of the party's success on the merits; (2) whether the injunction will save the party from irreparable injury; (3) the probability that granting the injunction will substantially harm others; and (4) whether the public interest will be served by the injunction. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell,* 388 F.3d 547, 550-51 (6th Cir. 2004); *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir. 1998); *Six Clinics*

*Holding Corp., II v. Cafcomp Sys., Inc*., 119 F.3d 393, 399 (6th Cir. 1997); *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985).

"[T]he four factors are not prerequisites to be met, but rather must be balanced as part of a decision to grant or deny injunctive relief." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). The court need not make specific findings regarding each of the four factors if fewer factors are dispositive of the issue. *See Six Clinics Holding Corp.,* 119 F.3d at 399. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000). The plaintiff has the burden of proof, and that burden is the same irrespective of whether the relief sought is mandatory or prohibitive. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998).

With respect to the merits of the claim, the main thrust of the plaintiff's complaint is not that the City denied a license, but that it cannot operate its hot dog cart in a restricted area because of the requirement in the ordinance to obtain special permission to exercise the privileges of its license in that area. A major offensive provision of the ordinance in its original iteration, according to the plaintiff, was its protectionist feature in favor of property-owning business at the expense of transient merchants, like street vendors. The City did not dispute that the ordinance favored local permanent businesses and created a classification in that regard, but it maintained that the ordinance was a valid exercise of its police power.

"Throughout our history the several States have exercised their police powers to protect the health and safety of their citizens. Because these are primarily, and historically, . . . matter[s] of local concern, the States traditionally have had great latitude under their police powers to legislate

as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Neinast v. Board of Trustees of Columbus Metro. Library*, 346 F.3d 585, 593 (6th Cir. 2003) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). Generally speaking, such "[l]aws that do not involve suspect classifications and do not implicate fundamental rights or liberty interests . . . will be upheld if they are 'rationally related to a legitimate state interest.'" *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 368 (6th Cir. 2002) (quoting *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000)). "On rational-basis review, a classification bears a strong presumption of validity and a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 484 (6th Cir. 1999) (internal quotation marks and citation omitted). In the words of the Supreme Court, the classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993). The government may make classifications, provided they are "not unreasonable, arbitrary or capricious." *Molina-Crespo v. U.S. Merit Sys. Prot. Bd.*, 547 F.3d 651, 659 (6th Cir. 2008) (quoting *Gilday v. Bd. of Elections of Hamilton Cnty., Ohio*, 472 F.2d 214, 217 (6th Cir. 1972)).

A protectionist law that favors local businesses at the expense of foreign interests may offend the Commerce Clause, and that was the subject of the supplemental briefing ordered by the Court. The Supreme Court has previously held that the dormant Commerce Clause prohibits States from "build[ing] up [their] domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States." *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 272-73 (1984) (internal quotation marks and citation omitted; alterations in the original) (striking down as

unconstitutional a Hawaii excise tax that exempted certain alcoholic beverages produced within the State). "Discriminatory laws motivated by 'simple economic protectionism' are subject to a 'virtually *per se* rule of invalidity,' which can only be overcome by a showing that the State has no other means to advance a legitimate local purpose." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338-339 (2007) (quoting *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978), and citing *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).

However, neither of these considerations obtain any longer since the ordinance was amended. Monroe City Ordinance 11-001, signed into law earlier this year and presently in effect, amended Ordinance 374-2 by striking the reference in the definition section to a "restricted area." It amended section 374-11 by eliminating all references to a restricted area and deleting the requirement of obtaining special permission to operate anywhere in the City, maintaining in that section a requirement that the transient merchant have liability insurance. And it amended section 374-13 by deleting as prohibited conduct engaging in business as a transient merchant in the restricted area without special permission. As a consequence, the ordinance in its present form no longer contains the provisions deemed constitutionally offensive to the plaintiff.

The amendment does not completely help the plaintiff, however, because the ordinance still prohibits "[r]emain[ing], while engaged in the business of a hawker and peddler, in any one place in the City for a period of time longer than 10 minutes." City of Monroe Ordinance § 374-13(A)(4) (as amended by Monroe City Ordinance 11-001). But even that provision may not matter, as the activity proposed by the plaintiff probably fit the definition of "hawker and peddler" as stated in the ordinance, and more likely would fall under the definition of a "transient merchant," which is not included in section 374-13(A)'s ten-minute restriction. Moreover, there is no prohibition on seeking

a variance from that provision even if it does apply, and the City remains open to negotiation on that point.

The elimination of the restricted area provisions of the ordinance essentially moots the plaintiff's arguments concerning equal protection, violation of the dormant Commerce Clause, and vagueness, at least with respect to prospective injunctive relief. The plaintiff's damages claim still is a live controversy, since the plaintiff has not operated its business during the past two summers. As for the *ultra vires* argument, there is little doubt that a city may regulate merchants operating on public streets within the city limits under the local government's police powers. *See Ater v. Armstrong*, 961 F.2d 1224, 1229 (6th Cir. 1992) (safety in the roadways is a legitimate interest of the state); *see also Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 152 (1969) (stating that the municipality "must rightfully exercise a great deal of control [over the use of public streets and sidewalks] in the interest of traffic regulation and public safety"). Of course, if the *only* purpose of the ordinance is the protection of local property-owning businesses at the expense of transient merchants, the ordinance may not survive scrutiny under the Due Process Clause. *See Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) ("Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose." (citing *City of Philadelphia*, 437 U.S. at 624)); *see also Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983) (distinguishing between legitimate state purposes and "providing a benefit to special interests"). But the plaintiff has not made that argument in this case.

The plaintiff seeks an injunction against the enforcement of the ordinance that prohibits it from operating in the City's restricted area. Because that limitation not longer exists, the plaintiff is unable to demonstrate a likelihood of success on the merits of its claim for equitable relief.

Moreover, the Court understands that the plaintiff has not applied for a license to operate its business during the current season, and it certainly has not asked for a variance from the ten-minute rule, if it even applies to the plaintiff's proposed operations. Therefore, the plaintiff is not able to show any likelihood of irreparable injury if no injunction is issued. The offending sections of the ordinance have been repealed.

III.

For the reasons stated, the Court finds that the plaintiff is not entitled to a preliminary injunction. If the City is unreceptive to the plaintiff's attempts to obtain permission to conduct its business under the current iteration of City of Monroe Ordinance § 374-11, it may file a new application for relief.

Accordingly, it is **ORDERED** that the motion for a preliminary injunction [dkt. #5] is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 8, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 8, 2011.

s/Deborah R. Tofil  
DEBORAH R. TOFIL